IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00182-WJM-KLM

JOHN MICHAEL BROADUS,

      Plaintiff,

v.

ANTHONY A. DECESARO, Grievance Officer,
CHAPDELAIN, Associate Warden,
CHP, Clinical Health Provider,
GILES, Lieutenant,
RAYMOND HIGGINS,
ROBERT KEISEL,
EVA LITTLE, Lieutenant,
LUYANDO, Lieutenant,
DENNY OWENS,
JAMIE SOUCIE,
SWINGLE, Lieutenant,
THODE, Sergeant,
JAMEY VANMETER,
KENNETH WILDENSTEIN, Major,
WALKER, Correctional Officer,
JANE DOE #1, Nurse,
JANE DOE #2, Nurse,
JOHN DOE ##1-4,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's**

**Amended Complaint (Doc. 6) Pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6)** [#23][1]

---

[1] "[#23]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

(the "Motion").  Plaintiff, who proceeds in this manner as a pro se litigant,[2] filed a Response [#26] in opposition to the Motion, and Defendants filed a Reply [#37].  The Motion has been referred to the undersigned for recommendation [#35] pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c).  The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#23] be **GRANTED in part and DENIED in part**, as explained below.

## I.  Summary of the Case

Plaintiff is currently a prisoner of the State of Colorado incarcerated at the Sterling Correctional Facility ("SCF") in Sterling, Colorado.  *Am. Compl.* [#6] at 1.  All Defendants are medical personnel or correctional officers, or are otherwise employed by the Colorado Department of Corrections.[3]  *Id.* at 2-5.  Six Defendants are as-yet unidentified by Plaintiff. *Id.* at 4-5.  However, Plaintiff states that Jane Doe #1 and Jane Doe #2 are nurses, John Doe #1 is a lieutenant, John Doe #2 is a physician, and John Doe #3 and John Doe #4 are correctional officers.  *Id.*  Plaintiff asserts four Eighth Amendment claims in the Amended Complaint [#6].[4]  *Id.* at 8-17.  Claims One, Two, and Three additionally assert Fourteenth

---

[2] The Court must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[3] "Defendants" in this Recommendation do not include Defendant CHP, which has not been served.  *See Order to Show Cause* [#39].  Thus, this Recommendation does not address Claim One with respect to Defendant CHP, which is the sole claim asserted against it.

[4] A fifth claim was previously dismissed as legally frivolous.  *See Order* [#7] at 8.

Amendment Claims.  *Id.* at 8-14.  Judge Babcock in his initial review of the Amended

Complaint [#6] thoroughly outlined Plaintiff's claims, which the Court incorporates as

follows:

> Mr. Broadus asserts five claims, four of which assert cruel and unusual punishment under the Eighth Amendment, and the fifth, which asserts a violation of the First Amendment right of access to the courts.  He contends: Defendants are deliberately indifferent to his serious medical needs (claim one); Defendants are deliberately indifferent to hazardous conditions to which he is being exposed, including exposure to uranium and trihalomethane, and have failed to supply an adequate alternative drinking water supply (claim two); Defendants are deliberately indifferent to the danger he is in by being associated with a known gang and have promulgated dangerous policies for inmates to disassociate themselves from gangs, which have resulted in inmate deaths (claim three); [and] Defendants were deliberately indifferent when they used mace on him and refused to allow him to decontaminate (claim four) . . . .

> In support of his First Claim, Plaintiff alleges that on or about February 29, 2014, he injured his knee playing basketball. He was told to turn in a medical kite, which he did.  On or about March 5, 2014, he attempted to declare a medical emergency pursuant to the administrative regulations 700-02 (IV)(A)(l) and (2) as [his] knee was bloated and disfigured and he was walking with a prominent limp.  About an hour after the request, he was told to pack his belongings and that he would be moving cells from the bottom bunk to a top bunk.  When he informed Defendant Luyando that he could not climb without causing further pain and injury and that he really needed to see medical, he was cuffed and taken to Segregation for refusing cell assignment.

> Between the months of April 2014 and May 2014, he was finally seen by a medical physician [John Doe #2] who did an ex-ray but informed him that the procedure would only detect bone damage and not trauma or injury to any tendons, muscles, ligaments, or nerves.  Later, he was told that a request for an MRI was denied by CHP[, i.e., Clinical Health Provider].  No MRI nor any attempt at diagnosing or treating the injury occurred, despite the fact that swelling and discomfort persisted until October of 2014, when he was seen and examined by a physician who informed him that he may have a partially torn meniscus.  He gave Plaintiff a bottom bunk restriction and a month prescription of Motrin.  Plaintiff claims that he is living in a constant state of pain and discomfort and that his injured knee seems to be getting worse as a result of deterioration and medical neglect.

In support of his Second Claim that Defendants are deliberately indifferent, Mr. Broadus specifically alleges that on or about the month of August 2014, inmates at Sterling Correctional Facility were issued a memorandum on the drinking water and were advised that Uranium was found in Sterling's water supply.  At the time of this water crisis, Plaintiff was in close custody and only afforded six hours a day outside of his cell.   The alternative non-contaminated drinking water was located outside of the cells and there were many days in which Plaintiff was unable to obtain noncontaminated drinking water.  Plaintiff was encouraged to drink the contaminated water in the sink by guards stating that it "was okay to drink."  After drinking the contaminated water, Plaintiff complained of painful urination and found blood in his stool on two separate occasions.  There are many more instances in which Plaintiff was denied access to non-contaminated drinking water as well as medical proof that Plaintiff was suffering from the very same symptoms linked with the warning of cancer and kidney toxicity.

In support of his Third Claim, Plaintiff alleges that he has been "flagged" as an "associate" to "The Crips," a Security Threat Group ["STG"].  When he told his case manager that he was not in any gang, he was referred to STG Intel, Lieutenant Eva Little [("Little")] to "begin the inactive process" put in place for inmates wishing to disassociate from their gang.  When Plaintiff stated that he would not engage in any scheme or agenda that required him to admit to something that was not true, Defendant Eva Little stated that the inactive process was the only solution if he didn't want to be flagged as a gang member.  Plaintiff claims that this policy has resulted in inmate injury and death by inmate gang members.  In addition, Plaintiff claims that policy requires inmates affiliated or associated as STG to only have cell mates of that same association.  He claims that this has put him in danger of serious bodily injury from inmate CRIP members.

With respect to his Fourth Claim, Plaintiff alleges that on October 23, 2013, at approximately 2 p.m., two inmates were involved in a physical altercation with Correctional Officers in the office and hallway of Unit 4.  During the altercation, Plaintiff and other black inmates were sprayed with mace. Plaintiff was taken to segregation where he complained that his eyes and skin burned and that he couldn't breathe.  Plaintiff was never allowed to "decontaminate" and was unable to wash his face in his cell sink as it had no water pressure.  Plaintiff was not allowed a shower until two days later despite procedures required for inmates sprayed with mace.  Plaintiff claims that the skin around his eyes began to peel away and he developed scarring on his arms and neck as a result of not being able to wash the chemical agent from his flesh in a timely manner.

Order [#7] at 2-5 (citing Am. Compl. [#6]).  To the extent necessary, further allegations are

discussed in the Analysis section below.

In recompense, Plaintiff seeks largely unspecified declaratory, injunctive, compensatory, and punitive relief. *Am. Compl.* [#6] at 21.  In the Motion [#23], Defendants assert that Plaintiff's Amended Complaint [#6] should be dismissed in its entirety because (1) Defendants are immune from monetary damages in their official capacities; (2) Defendants Jamey VanMeter ("VanMeter"), Jamie Soucie ("Soucie"), Denny Owens ("Owens"), Raymond Higgins ("Higgins"), Anthony A. DeCesaro ("DeCesaro"), Robert Keisel ("Keisel"), and Associate Warden Chapdelaine ("Chapdelaine") did not personally participate in any alleged constitutional violation; (3) the Amended Complaint fails to state a claim upon which relief can be granted; and (4) Defendants are entitled to qualified immunity.

## II.  Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the court at any point in the proceeding. *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1003.

-5-

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.    Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

-6-

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III. Analysis

#### A. Voluntary Dismissal

In response to the Motion [#23], Plaintiff states that he does not contest dismissal of the following six Defendants from his lawsuit: (1) Defendant DeCesaro, (2) John Doe #1, (3) John Doe #2 (physician), (4) Defendant Soucie, (5) Defendant VanMeter, and (6)

-7-

Defendant Walker.  *Response* [#26] at 2-3.

Accordingly, the Court **recommends** that Defendants DeCesaro, John Doe #1, John Doe #2, Soucie, VanMeter, and Walker be **dismissed without prejudice**.  *See* Fed. R. Civ. P. 41(a)(1)(B).

## B.    Eleventh Amendment Immunity

First, Defendants raise the issue of Eleventh Amendment immunity.  *Motion* [#23] at 3-5.  This challenges the Court's subject matter jurisdiction.  *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002).  The doctrine of Eleventh Amendment immunity protects states and their agents from suit when acting in their official capacities.  *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-559 (10th Cir. 2000).  To the extent that Plaintiff sues Defendants in their official capacities, "[s]uits against state officials in their official capacit[ies] should be treated as suits against the state."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983).  Thus, pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in their official capacities for monetary relief.  *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

Here, Defendants are employees of the Colorado Department of Corrections.  *Am. Compl.* [#6] at 2-5.  Therefore, they are state officers.  Consequently, all of Plaintiff's official capacity claims against Defendants for monetary relief must be dismissed without prejudice for lack of subject matter jurisdiction on the basis of Eleventh Amendment immunity.  *Shue*

*v. Lampert*, 580 F. App'x 642, 644 (10th Cir. 2014).

Accordingly, the Court **recommends** that Plaintiff's claims against all Defendants in their official capacities for monetary damages be **dismissed without prejudice**.  *See Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013).

## C.    Personal Participation

Defendants next argue that Defendants Owens, Higgins, Keisel, and Chapdelaine did not personally participate in any alleged constitutional violation.  *Motion* [#23] at 5-8. The Court here only addresses this argument with respect to Defendants Owens, Higgins, and Keisel.  The sole claim asserted against Defendant Chapdelaine is addressed below in Section E.1.b.

Individual liability pursuant to Section 1983 "must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1425, (10th Cir.1997); (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)).  A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the described violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).

With respect to supervisors, the Tenth Circuit Court of Appeals recently reiterated the standard for Section 1983 supervisory liability in *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767-69 (10th Cir. 2013).  The Court of Appeals first noted that the term "supervisory liability" is somewhat of a misnomer, as it may imply vicarious liability.

*Id.* at 767 (citing *Iqbal*, 556 U.S. at 677; *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)).  However, "Section 1983 does not authorize liability under a theory of respondeat superior."  *Schneider*, 717 F.3d at 767 (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Schneider*, 717 F.3d at 767 (quoting *Iqbal*, 556 U.S. at 677).

Accordingly, a plaintiff must demonstrate an "affirmative link" between the supervisor and the alleged constitutional violation.  *Schneider*, 717 F.3d at 767 (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).  The affirmative link requires more than "a supervisor's mere knowledge of his subordinate's" conduct.  *Schneider*, 717 F.3d at 767 (quoting *Iqbal*, 556 U.S. at 677).  Three elements are required to establish a Section 1983 claim against a defendant based on that defendant's supervisory responsibilities: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind.  *Schneider*, 717 F.3d at 767 (citing *Dodds*, 614 F.3d at 1195).

Defendants argue that Plaintiff cannot establish personal participation by Defendants Keisel, Owens, or Higgins because his claims against them are solely based on their denials of grievances.  *See Motion* [#23] at 5-8; *Reply* [#37] at 6-8.  Defendant Keisel is only implicated in Plaintiff's Claim Three regarding gang affiliation.  *See Am. Compl.* [#6] at 13-14.  With respect to him, Plaintiff alleges:

> Defendant . . . Keisel conferred with me personally and was the respondent of my step two grievance.  His position was the same as Defendant Little's (which is I should admit to being a gang member who no longer wants to be associated) and begin the process of disassociation so I could be listed as "inactive."  Inmates are being assaulted and even killed because of the policies put in place and enforced by Defendants Little and Keisel.

-10-

*Id.* Defendants Owens and Higgins are only implicated in Plaintiff's Claim Two regarding water contamination. *See id.* at 11-12. With respect to them, Plaintiff alleges:

> In the month of August 2013, I complained (in the form of grievances) of dehydration–which was addressed by [Defendant] Owens[ and Defendant] Higgins . . . . I told the Defendants that I was not getting enough water during the hours we were contained inside of the cells. I informed these Correctional Officers that I was suffering from afflictions such as dizziness, [p]hysical weakness, tender[ ] gums and painful urination. The remedy I requested was that inmates be allowed unlimited access to the non contaminated alternative drinking water during this time of crisis. In the response to the step one, Defendant Owens misrepresented my requested remedy and denied the grievance altogether. He offered no solution to the cruel and unusual punishment he knew I was being subjected to and he was indifferent to the health issues the lack of water was causing. In the step two grievance/response, Defendant Higgins affirmed [Defendant] Owens['] response and again, the issue concerning my health and the fact that I was severely dehydrated was ignored.

*Id.*

"[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Here, there is no indication that Defendants Keisel, Owens, or Higgins were themselves directly connected to the alleged violation of Plaintiff's constitutional rights. With respect to Defendants Owens and Higgins, Plaintiff only alleges that he interacted with them through the grievance process, not that they somehow caused or were otherwise involved in the alleged water issue. With respect to Defendant Keisel, although Plaintiff alleges that he personally spoke with him in connection with the step two grievance which Defendant Keisel denied, there is still no indication that Defendant Keisel somehow caused or was otherwise involved in the gang affiliation issue beyond his ultimate denial of the grievance. Thus, because Plaintiff's "only allegations involving these defendants relate to the denial of his grievances,

-11-

he has not adequately alleged any factual basis to support an 'affirmative link' between these defendants and any alleged constitutional violation." *See id.* Thus, Plaintiff has failed to demonstrate the personal participation of Defendants Keisel, Owens, and Higgins in connection with the alleged constitutional violations.

Accordingly, the Court **recommends** that Defendants Keisel, Owens, and Higgins be **dismissed with prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should attach to a dismissal when the plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

**D.     Fourteenth Amendment Due Process**

Before examining the merits of Plaintiff's Eighth Amendment claims, the Court notes sua sponte that Plaintiff attempts to invoke the protections of the Fourteenth Amendment in connection with Claim One (knee injury), Claim Two (water contamination), and Claim Three (gang affiliation). *See Am. Compl.* [#6] at 11-14. He does so in addition to the protections offered by the more specific Eighth Amendment guarantees implicated by these claims. *See id.* However, this is inappropriate. *See Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2013 WL 4799654, at *4 (D. Colo. Sept. 5, 2013). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation and internal quotation marks omitted)). To the extent Plaintiff may be asserting procedural due process claims, the same rationale

applies. *Carbajal*, 2013 WL 4799654, at *4 n.7 (citing *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007)).  Claims One, Two, and Three implicate rights protected by the specific constitutional guarantees of the Eighth Amendment, as Plaintiff appears to recognize in the articulation of his claims.  Thus, the due process portions of Claims One, Two, and Three[5] should be dismissed.

Accordingly, the Court **recommends** that the due process portions of Plaintiff's Claims One, Two, and Three be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

## E.    Qualified Immunity

All Defendants raise a qualified immunity defense.  When defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process.  One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established."  *Id.*  The Supreme Court has held that courts are no longer required to address the inquiries in a particular order

---

[5]  In addition, with respect to Claim Three and Plaintiff's alleged gang affiliation, the Court notes that, in Colorado, "[c]lassification decisions are within the discretion of the Department of Corrections and a particular classification does not implicate any liberty interest protected by the Fourteenth Amendment Due Process Clause."  *Sparks v. Foster*, 241 F. App'x 467, 471 (10th Cir. 2007) (citing *Green v. Nadeau*, 70 P.3d 574, 577 (Colo. App. 2003) (citing *Deason v. Kautzky*, 786 P.2d 420, 422 (Colo. 1990) (en banc)).  Because Plaintiff does not have a liberty interest in a particular classification, whether as a gang member or otherwise, he cannot maintain an action based on his classification under the Fourteenth Amendment.  *See Sparks*, 241 F. App'x at 471.

when evaluating a qualified immunity claim.  *Pearson v. Callahan*, 555 U.S. 223 (2009).

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right.  *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  In other words, there must be case authority in which a constitutional violation was found based upon similar conduct.  *See Callahan v. Millard Cnty.*, 494 F.3d 891, 903 (10th Cir. 2007).

The plaintiff bears the burden of proving that the defendants' actions violated clearly established law.  *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994).  *See Saucier*, 533 U.S. at 201 ("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition .").  "[T]he right the official is alleged to have violated must have been 'clearly established' in a particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right."  *Id.* at 202 (citation omitted).  "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct . . . .  If the officer's mistake as to what the law requires is reasonable, the officer is entitled

-14-

to the immunity defense." *Saucier*, 533 U.S. at 205.  After all, "qualified immunity precludes the imposition of liability for 'all but the plainly incompetent or those who knowingly violate the law.'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).

In short, the defense of qualified immunity is available to: (1) individual governmental officials, but not governmental entities; (2) regarding claims for monetary damages, but not claims for injunctive or declaratory relief; and (3) regarding claims against individual governmental officials in their individual capacities, not their official capacities.  *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo. Nov. 22, 2004).  Accordingly, the Court proceeds to examine the claims against Defendants to the extent Plaintiff asserts claims against them in their individual capacities for monetary damages.

### 1.    Claim Two: Water Contamination

This claim is asserted against John Doe #3 (a correctional officer with whom Plaintiff interacted on October 22, 2013.), John Doe #4 (a correctional officer with whom Plaintiff interacted on January 2 and/or 3, 2014), and Defendant Chapdelaine, the Associate Warden of SCF.  *Am. Compl.* [#6] at 11-12.  Plaintiff asserts that in August 2013,[6] the inmates at SCF were informed that the City of Sterling's water supply, from which SCF obtains its water, was contaminated with Uranium, which is "associated with health effects such as cancer and kidney toxicity."[7]  *Id.* at 11.  Plaintiff asserts that from August 2013 to

---

[6]  Plaintiff typed "2014" here but, in the context of the rest of the claim, this appears to be an error and should actually be 2013.  *See Am. Compl.* [#6] at 11.

[7]  Plaintiff's claim appears to center on proper hydration with clean water rather than on the alleged health affects of having been exposed to water allegedly contaminated with Uranium.  To the extent he discusses symptoms of such exposure, he seems to provide this information to

January 2014 he had access to water six hours a day. *Id.* Incorporating a paragraph from

his initial Complaint, he states:

> At the time of this crisis, inmates in Close Custody were only afforded six
> hours a day outside of the cells ([f]rom 8/9am-10/11am; 2-4pm, and 7-9pm).
> It was during this time in which inmates were allowed access to non
> contaminated drinking water.   There were only two containers, each
> approximately 8-10 gallons.  There are nearly one-hundred inmates per pod,
> so often inmates were limited to one 12 ounce cup to ensure everyone at
> least quenched their thirst for those two hours.  The 8-10 gallon containers
> were refilled at the discretion of unit 4 correctional officers who often put
> other issues as a priority over drinking water, so there were days when less
> than three 12 ounce cups [were] made available, and on occasions such as
> "facility lock-down" or "RFP", no non contaminated drinking water was
> available at all.

*Compl.* [#1] at 7 (cited by *Am. Compl.* [#6] at 11).   Plaintiff further states that on one day

in October 2013 and from 8:00 p.m. on January 2, 2014 through 12:00 p.m. on January 3,

2014, he was denied non contaminated water while on lock down status. *Am. Compl.* [#6]

at 11.  He also vaguely states that "[t]here were many days in which I was unable to obtain

non contaminated drinking water." *Id.*  In addition, he states that "[a]t the time of this water

crisis the weather was unbearably hot; the cells were humid, stuffy, and put extra stress on

the body for hydration." *Id.* at 12.

### a.    John Doe #3 and John Doe #4

The Court first examines whether this right was clearly established at the time of the

alleged violation, i.e., August 2013 through January 2014. *See Pearson*, 555 U.S. at 236.

As already noted, in order for a constitutional right to be clearly established, there must be

a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from

other circuits must establish the constitutional right. *Medina*, 960 F.2d at 1498.

---

support his allegation that he could not hydrate himself using tap water from the sink in his cell.

Substantial deprivations of adequate drinking water, shelter from extreme heat or cold, food, and sanitation for a significant period of time are sufficiently serious to satisfy the objective component of an Eighth Amendment claim.  *See, e.g.*, *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (finding that prisoners asserted a sufficiently serious deprivation by alleging that prison officials held them outside without access to adequate shelter, water, food, or sanitation for four days when the temperatures ranged from 70 to 94 degrees and for 17 hours in sub-freezing temperatures).  However, temporary deprivations of sanitation, water, and shelter that last only a short amount of time and do not pose a serious threat of harm to the prisoner do not give rise to deprivations that are sufficiently serious to support an Eighth Amendment claim.  *See, e. g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (prisoner who was temporarily denied access to a "working toilet" did not suffer deprivation of "minimized civilized measure of life's necessities"); *Barney v. Pulsipher*, 143 F.3d 1299, 1311-12 (10th Cir. 2001) (holding that a situation involving filthy cells, poor lighting, inadequate ventilation or air cooling, and unappetizing food "simply [did] not rise to the level of a constitutional violation" where prisoners were exposed to the conditions for only forty-eight hours and listing cases in which a few days spent in unsanitary conditions did not violate the Eighth Amendment); *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (recognizing that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment").

Plaintiff has not directed the Court's attention to any case demonstrating that the actions of Defendants John Doe #3 or John Doe #4 violated clearly established law, as is his burden.  *See Guffey*, 18 F.3d at 871.  The most similar case the Court has found is *Gee*

*v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010), in which the Tenth Circuit Court of Appeals found that denying a prisoner food or water for more than twenty-four hours during transport between prisons and restraining him with "a stun belt, belly chains, handcuffs, and a black box covering the handcuffs, which prevented him from accessing the food and water" provided to other prisoners was a violation of the Eighth Amendment.

"[T]he Constitution does not mandate comfortable prisons," and conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981). Plaintiff only complains of John Doe #4 in connection with one 16-hour period in which he was not permitted water on January 2-January 3, 2014 while on lock-down status. *Am. Compl.* [#6] at 11. Plaintiff only complains of John Doe #3 in connection with an unspecified length of time on October 22, 2013 while the prison was on lock-down status and Plaintiff was not permitted water. *Id.* Given the authority cited above, the Court cannot find that these Defendants' actions violated clearly established law when the deprivations lasted no more than twenty-four hours. Thus, Defendants John Doe #3 and John Doe #4 are entitled to qualified immunity.

Accordingly, the Court **recommends** that Defendants John Doe #3 and John Doe #4 be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

### b.    Defendant Chapdelaine

Although Defendants primarily argue that Plaintiff's water contamination claim is only directed at Defendant Chapdelaine as a supervisor and/or as a responder to Plaintiff's grievance(s), the Court does not read Plaintiff's claim so narrowly regarding the role allegedly played by Defendant Chapdelaine. *See Haines*, 404 U.S. at 520-21. Specifically,

Plaintiff alleges that:

> In the month of December 2013, on two separate occasions, I found blood in my stool. I immediately contacted medical and after a series of tests and examinations, medical confirmed this. From August 2013 well into January 2014, I complained to the Defendants–including the Associate Warden (Defendant Chapdelain[e]), who came and conferred with me in person, but did nothing to rectify or correct the cruel and unusual punishment. I shared the information of the afflictions I was suffering as a result of dehydration and/or contamination (specifically that the cells were unbearably hot and that I was constantly lethargic and thirsty. I told Defendant Chapdelain[e] that it hurt when I urinated, that my gums were tender and recently, I found blood in my stool), but these concerns went unaddressed by Defendant Chapdelain[e]. He was focused on assuring me that the Correctional Officers were doing all that they could to keep inmates properly hydrated, but contrary to his assertions, this was just not the case. I told him this and implored him to talk to other inmates to verify my claims, but he stated that I was the only one complaining on paper.

*Am. Compl.* [#6] at 12.

To prevail on the subjective component of the deliberate indifference test, an inmate must show that the prison official: (1) knows of a substantial risk of serious harm posed to the inmate and (2) disregards that risk by failing to take reasonable steps to abate the risk. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). To recklessly disregard a risk, "[a] prison official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk." *Id.* Finally, the Tenth Circuit has indicated that the subjective component requires the prison official to disregard the specific risk of harm claimed by the prisoner, not a more general risk. *Id.*

The Tenth Circuit Court of Appeals recently determined in another case regarding

the allegedly contaminated drinking water at SCF that the incarcerated plaintiff had stated an Eighth Amendment deliberate indifference claim against Defendant Chapdelaine based on the following allegations:

> According to the amended complaint, Mr. Chapdelaine knew that the Sterling water supply had been contaminated. His knowledge allegedly came from a state administrative notice that disclosed contamination of the city's water supply and encouraged citizens to use alternative water sources. Nonetheless, Mr. Chapdelaine allegedly told the inmates that the tap water was perfectly safe to drink. [The plaintiff] adds that he relied on these assurances, drinking the tap water and incurring enormous health risks as a result. Based on these allegations, a reasonable fact-finder could infer that Mr. Chapdelaine acted with deliberate indifference to [the plaintiff's] health.

*Walker v. Hickenlooper*, __ F. App'x __, __, No. 14-1462, 2015 WL 5847486, at *2 (10th Cir. Oct. 8, 2015) (internal citations omitted). Here, Plaintiff's allegations against Defendant Chapdelaine differ slightly from the allegations in *Walker v. Hickenlooper*. Nevertheless, the Court finds that a reasonable fact-finder could infer here that Defendant Chapdelaine acted with deliberate indifference to Plaintiff's health based on his alleged knowledge of Plaintiff's chronic dehydration.

Regarding whether Plaintiff's constitutional right was clearly-established, Plaintiff has not directed the Court's attention to a Supreme Court or Tenth Circuit decision on point or demonstrated that the clearly established weight of authority from other courts supports Plaintiff's claim. *See Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012).

> Given the unlikelihood of cases that are factually identical, however, [the Tenth Circuit Court of Appeals has] adopted a sliding scale: The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation. But existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate. If the facts place the case in the hazy border between excessive and acceptable . . . , the law is not clearly established.

*Waters v. Coleman*, __ F. App'x __, __, No. 14-1431, 2015 WL 6685394, at *3 (10th Cir. Nov. 3, 2015) (internal citations and quotation marks omitted).  As discussed previously, "[i]n general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while "substantial deprivations of shelter, food, drinking water, and sanitation" may meet the standard despite a shorter duration.  *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001).  Plaintiff here complained to Defendant Chapdelaine for a period of about five months, according to the Amended Complaint, and also told Defendant Chapdelaine repeatedly of health issues he believed were caused by the chronic dehydration.  Thus, Plaintiff alleges a substantial deprivation of drinking water for a period of about five months. The Court finds that the law was clearly established prior to August-January of 2013-2014 that depriving an inmate of adequate drinking water for a substantial period is unconstitutional.  Defendant Chapdelaine is therefore not entitled to qualified immunity at this time based on the allegations in the Amended Complaint.

Accordingly, the Court **recommends** that the Motion [#23] be **denied** with respect to Defendant Chapdelaine on Claim Two.

## 2.    Claim Three: Gang Affiliation

This claim only remains as to Defendant Little.  *See Am. Compl.* [#6] at 13-14; *supra* § III.C.  As Judge Babcock has already succinctly stated in this case, Plaintiff "asserts he is in serious danger of injury from [the Colorado Department of Corrections'] association of him with the CRIPs gang and that he has no viable way to disassociate himself without further putting his life in danger."  *Order* [#7] at 7.  Despite this, Defendants make several

arguments as to why the claim should be dismissed.

First, they argue that Plaintiff has not identified a specific or direct threat to his safety. *Motion* [#23] at 14.  As noted by Defendants, an inmate "does not have to await the consummation of threatened injury to obtain preventive relief," although he does have to "furnish more than a conclusory claim of being afraid." *Id.* (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996)).  Plaintiff provides two specific examples of other inmates in similar (although not identical) circumstances who in 2014 were attempting to dissociate from gang membership and were viciously beaten and/or killed. *Am. Compl.* [#6] at 13.  The Court finds that these examples "furnish more than a conclusory claim of being afraid." *See Riddle*, 83 F.3d at 1205.  To the extent Defendants argue that there is a "question whether the threat of dissociation is real, as other gang members apparently do not consider [Plaintiff] to be a current member of the gang," *see Motion* [#23] at 14, the Court finds that Plaintiff has successfully alleged that merely proceeding with the inactive process is enough to endanger him, regardless of whether he was actually a member of any gang. *See Am. Compl.* [#6] at 13-14.

Defendants also argue that Plaintiff has not alleged that Defendant Little acted with the requisite state of mind, i.e., deliberate indifference to a serious risk of harm. *Motion* [#23] at 15.  The Court disagrees.  Plaintiff has alleged that he has told Defendant Little that he is not and never has been a member of any gang, that he has never expressed a desire to be in any gang, and that Defendant Little "knows of the policy gang members have towards 'deserters' (former members who want out) and is indifferent towards the danger(s) she's putting [Plaintiff] in." *Am. Compl.* [#6] at 13.  At this stage of the litigation, Plaintiff has alleged that Defendant Little knows of a substantial risk of serious harm posed to Plaintiff

and disregards that risk by failing to take reasonable steps to abate the risk. *Callahan*, 471 F.3d at 1159.

Finally, although Defendants assert that "the policy provided by CDOC and suggested by Defendant Little will assist in removing Plaintiff from the threat of harm he faces," *Motion* [#15] at 22, this argument is not supported by the Amended Complaint and instead presents a question of fact to be explored during discovery. Thus, the Court finds that Plaintiff has stated a claim for an Eighth Amendment violation.

Turning to whether Plaintiff's right is clearly established, the Court finds that it is under *Howard v. Waide*, 534 F.3d 1227, (10th Cir. 2008). "Under *Howard*, Plaintiff has an unequivocal right to be protected from substantial risks of assault by fellow prisoners in cases where 'he has presented evidence, both direct and circumstantial, that prison officials knew he faced an ongoing risk from a prison gang with a substantial presence in the facility, and that [prison officials] had reasonable responses available to them.'" *Aranda v. McCormac*, No. 08-cv-00487-WYD-KMT, 2010 WL 3893976, at *16 (D. Colo. Aug. 28, 2010) (quoting *Howard*, 534 F.3d at 1442). Plaintiff has alleged that Defendant Little knows of the risk he faces, that the CRIPs have a substantial presence at SCF, and that Defendant Little need only remove the allegedly false gang association from Plaintiff's file so he need not go through the inactive process. *Am. Compl.* [#6] at 13. At this stage, Plaintiff need not plead more. Thus, the Court finds that Plaintiff's right at issue on this claim has been clearly established at least no later than 2008.

Accordingly, the Court **recommends** that the Motion [#23] be **denied** with respect to Defendant Little on Claim Three.

### 3.     Claim Four: Mace

This claim is asserted against Defendants Lieutenant Swingle ("Swingle"), Major Kenneth Wildenstein ("Wildenstein"), Jane Doe #2, Sergeant Thode ("Thode"), and Lieutenant Giles ("Giles").  *Am. Compl.* [#6] at 15.  In short, Plaintiff alleges that he was sprayed with mace during a prison disturbance and then was not permitted to wash it off for two days.  Thus, Plaintiff's claim encompasses two aspects of the Eighth Amendment, i.e., excessive force and deliberate indifference.

With respect to the excessive force claim, Defendants argue that prison officials are permitted to use reasonable force, including mace, to quell prison disturbances.  *Motion* [#23] at 15-17.  However, Plaintiff alleges that Defendant Swingle sprayed him in the face in the absence of any provocation.  *Am. Compl.* [#6] at 15.  The Court finds that, at this early stage of the proceedings, this allegation is enough to state a claim for a violation of the Eighth Amendment as to Defendant Swingle.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (holding that an inmate stated an Eighth Amendment excessive force claim where there was no indication that he had acted inappropriately before he was beaten by prison guards).  The 1996 decision of *Mitchell v. Maynard* also demonstrates that Plaintiff's right was clearly established by the Tenth Circuit Court of Appeals prior to the date of the incident he alleges, i.e., October 2013.  *Am. Compl.* [#6] at 15.

The Court comes to a different conclusion with respect to Defendant Wildenstein, against whom Plaintiff appears to assert both use of excessive force and deliberate indifference.  Although Plaintiff alleges that Defendant Wildenstein was present when Defendant Swingle used mace on him, he does not allege that Defendant Wildenstein took any action against Plaintiff at that time.  *Am. Compl.* [#6] at 15.  Thus, Plaintiff's excessive force claim fails.  Shortly thereafter, when Defendant Wildenstein came by Plaintiff's cell

and Plaintiff complained of having been sprayed with mace and of needing medical attention, Defendant Wildenstein escorted Plaintiff to the medical unit. *Id.* This action does not demonstrate that Defendant Wildenstein was deliberately indifferent to Plaintiff's serious medical needs.   Thus, Defendant Wildenstein is entitled to qualified immunity on both aspects of Plaintiff's claim.

With respect to the other Defendants, Defendants do not adequately address why Plaintiff's claim should be dismissed to the extent he was not permitted an opportunity to wash off the mace for nearly forty-eight hours.   On October 23, 2013, the day he was sprayed, Plaintiff states his "eyes and skin burned" and that he "couldn't breathe."   *Am. Compl.* [#6] at 15.   The next day, "the mace was still burning," Plaintiff "was still having problems breathing," and he "had been up all night because of the pain and irritation" in his eyes. *Id.* at 16.   By the third day the skin around his eyes began to peel away and Plaintiff "developed scarring on [his] arms and neck as a result of not being able to wash the chemical agent from [his] flesh in a timely manner."   *Id.*   Plaintiff argues that Defendants Jane Doe #2, Thode, and Giles were all made aware of Plaintiff's need to wash off the mace and yet did nothing to help him do so for nearly forty-eight hours.   *Id.* at 15-16.   The Court finds that these allegations are enough to state a claim for a violation of the Eighth Amendment as to Defendants Thode and Giles.   *Compare, e.g.*, *Williams v. Benjamin*, 77 F.3d 756, 765 (4th Cir. 1996) (holding that the denial of decontamination can give rise to an Eighth Amendment claim: "The guards refused to wash off the mace or permit [the inmate] to wash himself, informing him that he would not get a shower and that the mace was 'his problem.'   Under [the inmate's] version of the facts, no medical personnel checked on his condition and he was left helpless and in immense pain for eight hours.") *with Green*

*v. Corr. Corp. of Am.*, 401 F. App'x 371, 375 (10th Cir. 2010) ("[The inmate's] allegation that he could not successfully wash the chemicals out of his eyes for thirty minutes does not rise to the level of a constitutional violation.") *and Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005) (holding that requiring an inmate to wait 5-10 minutes before he could wash pepper spray from his face did not constitute an Eighth Amendment violation).

However, this analysis does not apply to Defendant Jane Doe #2.  Plaintiff states that she told him that "'decontamination' was not a medical issue and that Correctional Officers would give [Plaintiff] a shower once [he] got to segregation." *Am. Compl.* [#6] at 15.  By Plaintiff's account, his interaction with Defendant Jane Doe #2 happened shortly after he was sprayed with mace.  *See id.*  There are no allegations that Defendant Jane Doe #2 was lying when she told Plaintiff she believed that he would soon be decontaminated by correctional officers, or that she had any knowledge that Plaintiff had not been decontaminated shortly after she met with him.  In other words, Plaintiff has not alleged that Defendant Jane Doe #2 was deliberately indifferent to his medical needs when he alleges that he met her shortly after he was sprayed and that she believed he would be taken to decontamination shortly after his meeting with her.  Based on these allegations, the Court cannot find that Defendant Jane Doe #2 violated the Eighth Amendment, and she is entitled to qualified immunity.

The Court next turns to whether the law was clearly established with respect to the claims against Defendants Thode and Giles.  As noted previously, "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Waters*, 2015 WL 6685394, at *3.  The Court has been unable to find a case within the Tenth Circuit Court of Appeals

which discusses failing to permit an inmate to wash mace, pepper spray, or similar chemicals from his eyes for any period greater than thirty minutes. *See Green*, 401 F. App'x at 375. However, in light of the Fourth Circuit Court of Appeals' 1996 holding that eight hours constitutes an Eighth Amendment claim (and in the absence of any known authority to the contrary), the Court finds the nearly forty-eight hours alleged here to be "obviously egregious" and thus that Plaintiff's right here was clearly established. *See Williams*, 77 F.3d at 765; *Waters*, 2015 WL 6685394, at *3; *see also Prison Legal News v. Simmons*, No. Civ.A. 02-4054-MLB, Civ.A. 00-3370-MLB, Civ.A. 01-3017-MLB, 2005 WL 3118043, at *9 (D. Kan. Nov. 22, 2005) ("Even one or two cases from other circuits should not normally be sufficient to make a right 'clearly established' for qualified immunity purposes unless the right is so patently obvious that the only reason it has not been recognized by more federal appellate courts is because it has never been litigated.").

Accordingly, the Court **recommends** that the Motion [#23] be **granted** with respect to Defendants Wildenstein and Jane Doe #2 on Claim Four and that this claim be **dismissed with prejudice** as to these two Defendants. *See Reynoldson*, 907 F.2d at 127. The Court further **recommends** that the Motion [#23] be **denied** with respect to Defendants Swingle, Thode, and Giles.

### 4.    Claim One: Knee Injury

Claim One is asserted against Defendants Jane Doe #1 and Luyando and stems from an injury to Plaintiff's knee sustained while playing basketball.[8] *Am. Compl.* [#6] at 8-10. With respect to Defendant Luyando, Plaintiff asserts that the day after his injury:

---

[8]  As noted earlier, Plaintiff voluntarily dismisses Defendants Walker, John Doe #1, John Doe #2, and Soucie, who were all originally named in this claim. *See supra* § III.B.

On or about March 1, 2014, after I could no longer bear the pain without some kind of medical assistance, I complained about my right knee to . . . Lieutenant Luyando, but again was told to turn in a medical kite.  The pain and discomfort was severe and prevented any kind of mobility such as running, climbing, and lateral movements.  On or about March 5, 2014, I attempted to declare a medical emergency pursuant to the administrative regulations . . . , and Correctional Officer Walker . . . told me he would convey my request to Defendant Luyando.  My knee was still bloated and disfigured and I was walking with a prominent limp.  About an hour after the request, I was told to pack my belongings–that I would be moving cells, and from the bottom bunk which I had at the time, to a top bunk.  I immediately requested a[n] interview with Lieutenant Luyando at which time I explained to him that my injury prevented any kind of climbing and lateral movements and the fact that I had just requested a medical emergency seemed to me some kind of retaliation.  Defendant Luyando told me that I could not declare a medical emergency and that my only options were to climb on the top bunk or "go to the hole."  I informed Luyando that I could not climb without causing further pain and injury and that I really needed to see medical.  The request was denied and I was cuffed and taken to Segregation for refusing cell assignment.

*Id.* at 8.  Judge Babcock already determined that, to the extent Plaintiff alleges "that when he first asserted his injury, he was moved from a bottom bunk to a top bunk," Plaintiff has met the standard for stating a claim for the denial of adequate medical treatment.[9]  *Order* [#7] at 6.  Plaintiff's allegations demonstrate that Defendant Luyando demonstrated deliberate indifference by trying to make Plaintiff's injury worse than it already was immediately after Plaintiff sought medical help.[10]

_____

[9]  Plaintiff does not appear to assert a retaliation claim, but rather appears to solely use this incident in support of his claim that Defendant Luyando was deliberately indifferent to his medical need.

[10]  However, the Court notes that, even if, as Plaintiff argues, Defendant Luyando failed to follow a prison regulation requiring him to act on Plaintiff's asserted medical emergency, *Am. Compl.* [#6] ¶¶ 27-29, the mere failure to adhere to an administrative regulation is insufficient to state a constitutional violation. *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (stating that "a failure to adhere to administrative regulations does not equate to a constitutional violation") (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").

With respect to whether the law was clearly established, the Court has already noted that "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Waters*, 2015 WL 6685394, at *3 (internal citations and quotation marks omitted).   An Eighth Amendment claim requires that a plaintiff identify "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.  The present situation is not one where the plaintiff has alleged that the defendant did nothing, delayed his care, or otherwise failed to provide aid to the plaintiff.  Rather, Plaintiff has alleged that, within an hour of seeking medical help, Defendant Luyando purposefully attempted to make Plaintiff's medical situation worse by moving him and requiring him to perform an act Plaintiff asserts he was physically unable to do, i.e., climb into the top bunk, or else face administrative segregation. *Am. Compl.* [#6] at 8.  Here, Plaintiff sufficiently alleges that Defendant Luyando recklessly disregarded a risk to Plaintiff because he was both aware of facts from which the inference could be drawn that a substantial risk of harm existed, and he also allegedly drew that inference.  *See Farmer*, 511 U.S. at 837.  The Court finds that Plaintiff's right to not have his medical situation deliberately made worse by a prison employee was clearly established prior to March 2014, the date of the alleged incident. *See Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) ("By 1997, it was clearly established as well that prison officials run afoul of the Eighth Amendment's prohibition of cruel and unusual punishments when they exhibit 'deliberate indifference' to a convicted inmate's 'serious medical needs.'" (citing *Estelle*, 429 U.S. at 104)).  Defendant Luyando is therefore not entitled to qualified immunity at this time based on the facts as alleged in the Amended Complaint.

> With respect to Jane Doe #1, Plaintiff alleges:
>
> It is a practiced policy of Sterling Correctional Facility that every inmate going to segregation be seen by medical for an anatomical first.  So on March 5, 2014, shortly after being handcuffed for refusing cell assignment, I was taken to medical for a routine anatomical.  A nurse (henceforth named Jane Doe #1 until discovery discloses "her" name) noticed and noted the deformity of my knee, and again, I requested medical attention with the assertion that I was in pain and could barely walk.  I was told by this Defendant that my injury and the routine anatomical were two separate issues and that I would need to fill out a medical kite.

*Id.* at 8-9. This is not a situation where Plaintiff's life or health were in serious danger when Jane Doe #1 examined him.  *See, e.g.*, *Vining v. Dep't of Corr.*, No. 12 Civ. 3267(JPO), 2013 WL 2036325, at *5 (S.D.N.Y. Apr. 5, 2013) (holding that persons, "presented with Plaintiff's claim of a broken hand, would not have been expected to view this injury as of a sort that required immediate medical attention . . . unlike cases where a plaintiff was discovered unconscious on the ground . . . or where a plaintiff was known to have ingested a dangerous amount of alcohol or drugs").  Plaintiff alleges that Jane Doe #1 "noticed and noted" Plaintiff's knee injury but told him that he would have to fill out a medical kite.  Thus, she informed Plaintiff of the next step he would need to take in order to obtain medical care for his knee.  Given that Plaintiff's injury was clearly not life-threatening or otherwise seriously endangering him at that moment, and given that Jane Doe #1 informed Plaintiff how to obtain care for his knee, the Court finds that Jane Doe #1 was not deliberately indifferent to Plaintiff's need for medical care.  *See, e.g.*, *Aho v. Hughes*, No. 3:03CV1552(SRU)(WIG), 2005 WL 2452573, at *7 (D. Conn. Sept. 30, 2005) (holding that the incarcerated plaintiff did not state a deliberate indifference claim against medical providers when his principal complaints were that he should have been sent to the hospital sooner, should have seen the doctor sooner, and should have had surgery on his broken

hand); *see also Vining*, 2013 WL 2036325, at *5 (stating that the speed of treatment in non-life-threatening situations generally translates to negligence or medical malpractice, not deliberate indifference). Thus, Defendant Jane Doe #1 is entitled to qualified immunity.

Accordingly, the Court **recommends** that the Motion [#23] be **granted** to the extent that Defendants Jane Doe #1 be **dismissed with prejudice** and **denied** with respect to Defendant Luyando.

## F.    Injunctive and Declaratory Relief

The Court has now fully discussed Plaintiff's Eighth Amendment claims to the extent he seeks monetary relief from Defendants. However, Plaintiff also seeks generally unspecified injunctive and declaratory relief. *Am. Compl.* [#6] at 21. Defendants do not seek dismissal of these portions of Plaintiff's claims on the grounds that the injunctive and declaratory relief sought are, at best, ambiguous. Given Defendants' failure to make this argument, and given that some request for injunctive and/or declaratory relief could be gleaned from other portions of Plaintiff's Amended Complaint (e.g., a request to have Plaintiff's gang affiliation status changed), the Court will not recommend dismissal of these portions of the claims at this time solely on the basis of vagueness.

However, to the extent the Court has found in connection with the qualified immunity analysis that Plaintiff has failed to state a claim against Defendants Jane Doe #1, John Doe #3, John Doe #4, Wildenstein, and Jane Doe #2, the same reasoning applies here, as the first step of the qualified immunity analysis is identical to the analysis the Court would here undertake to determine whether Plaintiff has stated a claim upon which relief may be granted. *See Banks v. Katzenmeyer*, No. 13-cv-02599-KLM, 2015 WL 1004298, at *25 n.8

(D. Colo. Mar. 4, 2015).   Thus, the claims against these Defendants for injunctive or declaratory relief should be dismissed.

Further, the Court did not determine that Plaintiff properly stated an Eighth Amendment violation against Defendants John Doe #3 and John Doe #4 in connection with Claim Three, but rather determined that Plaintiff's Eight Amendment rights under those circumstances were not clearly established.   However, the Court can find no indication that Plaintiff seeks declaratory or injunctive relief in connection with these two Defendants, whose actions concerning the water issues were narrowly limited in scope, according to Plaintiff's allegations.   *See Whitney*, 113 F.3d at 1173-74 (stating that the Court should not "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf.").   The Court therefore finds that it is appropriate to also dismiss the declaratory and injunctive relief against these two Defendants to the extent the Amended Complaint may so state.

Accordingly, the Court further **recommends** that Plaintiff's Eighth Amendment claims for injunctive and declaratory relief be **dismissed with prejudice** with respect to Defendants Jane Doe #1, John Doe #3, John Doe #4, Wildenstein, and Jane Doe #2.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#23] be **GRANTED in part and DENIED in part**, as follows.   The Court **recommends** that all claims against all Defendants in their official capacity for monetary relief be **dismissed without prejudice**.   Further, concerning Claim One, the Court **recommends** that the Motion be **granted** with respect to Defendants John Doe #1, John Doe #2, Jane Doe #1,

Soucie, and Walker, and **denied** with respect to Defendant Luyando.  Concerning Claim Two, the Court **recommends** that the Motion be **granted** with respect to Defendants John Doe #3, John Doe #4, Higgins, Owens, and DeCesaro and **denied** with respect to Defendant Chapdelaine.  Concerning Claim Three, the Court **recommends** that the Motion be **granted** with respect to Defendant Keisel and **denied** with respect to Defendant Little.  Concerning Claim Four, the Court **recommends** that the Motion be **granted** with respect to Defendants Wildenstein and Jane Doe #2 and **denied** with respect to Defendants Swingle, Thode, and Giles.  The Court further **recommends** that Plaintiff's Fourteenth Amendment claims asserted in connection with Claim One, Claim Two, and Claim Three also be **dismissed with prejudice**.  The Court further **recommends** that Defendant VanMeter (against whom no particular claim appeared to be directed and whom Plaintiff voluntarily dismisses) also be **dismissed without prejudice**.[11]

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.

---

[11] Thus, if this Recommendation is adopted in full, no claim is dismissed in full but the following Defendants will be dismissed: John Doe #1, John Doe #2, John Doe #3, John Doe #4, Jane Doe #1, Jane Doe #2, Soucie, Walker, Keisel, Wildenstein, DeCesaro, and VanMeter. Further, if this Recommendation is adopted in full, the following Eighth Amendment claims and Defendants remain: (1) Claim One as to Defendant Luyando; (2) Claim Two as to Defendant Chapdelaine; (3) Claim Three as to Defendant Little; and (4) Claim Four as to Defendants Swingle, Thode, and Giles.

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 21, 2016, at Denver, Colorado.


BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge