**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-0182-WJM-KLM

JOHN MICHAEL BROADUS

Plaintiff,

v.

ANTHONY A. DECESARO, Grievance Officer,
CHAPDELAIN, Associate Warden,
CHP, Clinical Health Provider,
GILES, Lieutenant,
RAYMOND HIGGINS,
ROBERT KEISEL,
EVA LITTLE, Lieutenant,
LUYANDO, Lieutenant,
DENNY OWENS,
JAMIE SOUCIE,
SWINGLE, Lieutenant,
THODE, Sergeant,
JAMEY VANMETER,
KENNETH WILDENSTEIN, Major,
WALKER, Correctional Officer,
JANE DOE #1, Nurse,
JANE DOE #2, Nurse,
JOHN DOE ##1–4,

Defendants.

---

**AMENDED ORDER ADOPTING JANUARY 21, 2016 RECOMMENDATION OF MAGISTRATE JUDGE AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

---

The Court hereby amends its order entered March 3, 2016 (ECF No. 51). The only change is the insertion of additional language in the Conclusion (Part IV) to clarify: (1) the claims that survive Defendants' Motion to Dismiss, and (2) the Defendants against whom those claims are properly asserted.

* * *

This matter is before the Court on United States Magistrate Judge Kristin L. Mix's Recommendation dated January 21, 2016 ("Recommendation") (ECF No. 40), which recommends granting in part and denying in part Defendants' Motion to Dismiss (ECF No. 23). The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). No Defendant filed any objection. Plaintiff John Michael Broadus ("Broadus") filed a timely Objection to the Recommendation on February 9, 2016 ("Objection") (ECF No. 41). For the reasons set forth below, Broadus's Objection is overruled, the Recommendation is adopted, and Defendants' Motion to Dismiss is granted in part and denied in part.

## I. STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

Because Broadus is proceeding *pro se*, the Court must liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). The Court, however, cannot act as an advocate for Broadus, who must still comply with the fundamental requirements of the Federal Rules of Civil Procedure. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II. BACKGROUND

Broadus is a prisoner in the custody of the Colorado Department of Corrections ("CDOC") and currently housed at CDOC's Sterling Correctional Facility ("Sterling"). Broadus's currently operative Complaint (ECF No. 6) alleges numerous disparate violations of his constitutional rights by various Sterling employees and officials. A complete summary of Broadus's allegations can be found in the Recommendation. (ECF No. 40 at 2–5.) The facts relevant to Broadus's Objection are discussed below in connection with the Court's analysis.

## III. ANALYSIS

### A. Defendant Keisel

Broadus alleges that he has somehow "been 'flagged' as an 'associate' to 'The Crips,' a Security Threat Group." (ECF No. 6 at 13.) Broadus complained to his case manager, who referred him to Defendant Eva Little of "STG Intel."[1] Broadus told Little that he had never been part of The Crips or any other gang, but Little responded that his "only solution" was to "'begin the inactive process' put in place for inmates wishing to

[1] The Court presumes that "STG Intel" refers to individuals designated to gather or evaluate information about security threat groups at Sterling.

disassociate from their gang." Broadus rejected this advice because going through the "inactive process" would be at least an implicit admission that he really had been part of a gang, which could threaten his life: "Just as members get 'beat in' to gangs, they get 'beat out' of gangs . . . ." (*Id.*) In other words, Broadus fears that any sort of formal disassociation with a gang will prompt that gang to attack him—even though the members of that gang presumably know that Broadus has never been one of them.

Broadus then filed a grievance. That grievance was apparently denied at step one because "Defendant Robert Keisel conferred with me personally and was the respondent of my step two grievance." (*Id.*) Keisel, however, shared Little's view of the matter. He therefore denied Broadus's grievance. (*Id.*)

The Magistrate Judge understood all of this to be alleging that Little was the relevant decisionmaker (*i.e.*, someone with personal involvement in the decision to place Broadus on the Security Threat Group list), whereas Keisel was only a grievance respondent. (ECF No. 40 at 10, 21–23.) This understanding was likely bolstered by Broadus's Response brief, which focuses almost entirely on Little and her position as "an authority figure," and says nothing specific about Keisel. (ECF No. 26 at 9–11, 17–18.) Accordingly, the Magistrate Judge concluded that Broadus had stated a valid claim against Little, but not against Keisel because "'a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'" (*Id.* at 11 (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)).)

Broadus now argues that the Magistrate Judge's conclusion is logically

inconsistent because his Complaint supposedly alleges that both Little and Keisel were "working as authority/heads of STG boards, intelligence gathering, and/or policy makers and/or enforcers," and therefore it makes no sense to sustain his Complaint against Little but not Keisel. (ECF No. 41 at 1–2.) Broadus overstates his own allegations. His Complaint nowhere says that Keisel held a position of authority associated with Security Threat Group monitoring. Broadus *does* allege that "[i]nmates are being assaulted and even killed because of the policies put in place and enforced by Defendants Little and Keisel" (ECF No. 6 at 13), but this allegation is entirely conclusory as to Keisel. Nothing before it in the Complaint prepares the reader for this accusation, and nothing after it elaborates. On that basis alone, the Court may overrule Broadus's Objection to the Recommendation as it relates to Keisel. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (when evaluating *pro se* complaints, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based").

Moreover, when Broadus's Complaint is properly understood, the allegation that Keisel was a policymaker is irrelevant, and the Magistrate Judge's conclusion that Keisel was involved only in the denial of the grievance is well-supported. Normally, when a § 1983 plaintiff alleges a "policy," he or she does so in hopes of holding a government agency liable in damages for the actions of one of its employees, as permitted by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). But only municipal agencies can be liable under *Monell*; the Eleventh Amendment continues to protect state agencies, such as CDOC, from damages liability. *See Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58, 70 (1989). Thus, whether Little or Keisel was a policymaker is not directly relevant.

Broadus's claim is fundamentally a failure-to-protect claim: "an inmate [has] a right to be reasonably protected from constant threats of violence . . . from other inmates." *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980). Broadus alleges that he faces constant threats of violence because he has been erroneously placed on the Security Threat Group list. The question, then, is, "Who can get Broadus off the Security Threat Group list?" The entire thrust of Broadus's Complaint is that Little is the person who controls the list.[2] Keisel is alleged only to be someone who agrees with Little's view of the situation, and who denies a grievance. If Keisel could be liable, as a grievance respondent, for agreeing with the policy or decision that led to the grievance, then the Tenth Circuit's holding regarding grievance officers' non-liability would be a dead letter.

For all of these reasons, Broadus's objection to Keisel's dismissal is overruled.

**B. Defendants Higgins and Owens**

Broadus alleges that Sterling officials learned of uranium contamination in the facility's drinking water in or around August 2014. (ECF No. 6 at 11.) Broadus further

---

[2] It is not obvious that removal from the Security Threat Group list would help Broadus. He alleges that he has already "had numerous altercations with Crip members and adversaries of The Crips because of the bogus characterization." (ECF No. 6 at 13.) In other words, his supposed gang affiliation is already well known in the prison population. The Court does not see how removing Broadus from the Security Threat Group list would change other inmates' views about him, or prevent him from being "beat out" of a gang when that gang learns that he has found a way to remove himself from the list. For present purposes, however, the Court accepts Broadus's basic premise that his presence on the list puts him in danger and his absence from the list would remove the danger.

alleges that this has led to deleterious health effects in two ways: (1) uranium poisoning when drinking the water available in his cell, which allegedly remains contaminated; and (2) dehydration due to frequent lockdowns that prevent Broadus from accessing a common area where non-contaminated water is available. (*Id.*)

Defendant Owens responded to Broadus's first-level grievance regarding this condition, and denied it. Defendant Higgins responded to Broadus's second-level grievance, and likewise denied it. The Magistrate Judge found that Owens and Higgins could not be sued simply for denying Broadus's grievances. (ECF No. 40 at 11.)

Broadus objects as follows: "what's being ignored is th[e] fact that these Defendants are directly responsible for the policies and procedures put in place when it was first learned that the water supply at [Sterling] was contaminated. They refused to allow inmates complete access to non contaminated alternative drinking water, and refused to direct correctional officers to permit inmates access during periods of lockdown." (ECF No. 41 at 2.) These allegations do not appear anywhere in Broadus's complaint. Broadus may not defend against a motion to dismiss with allegations that do not appear in his Complaint. *See Silver v. Primero Reorganized Sch. Dist. No. 2*, 619 F. Supp. 2d 1074, 1080 (D. Colo. 2007). Broadus's objection to Higgins's and Owens's dismissal is overruled.[3]

---

[3] In evaluating Broadus's claim regarding the uranium-contaminated water, the Magistrate Judge surmised in a footnote that Broadus appeared to be suing specifically over dehydration, not over the effects of uranium poisoning. (ECF No. 40 at 15 n.7.) This conclusion does not appear to have affected the Magistrate Judge's analysis, but Broadus states for the record that he intends his water contamination claim to cover both dehydration and the effects of uranium. (ECF No. 41 at 3.) Broadus's allegations are broad enough to cover both. (*See* ECF No. 6 at 11–12.) However, because the Magistrate Judge's Recommendation does not in any way turn on the precise scope of the water contamination claim, there is nothing for the Court to sustain or overrule.

### C. All Other Recommendations

The Magistrate Judge made numerous other recommendations, some favoring Broadus and some favoring Defendants, to which no party has objected. The Court concludes that these portions of the Recommendation were thorough and sound, and that there is no clear error on the face of the record. *See* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."). The Court therefore adopts the Recommendation in its entirety.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Recommendation of the United States Magistrate Judge (ECF No. 40) is ADOPTED in its entirety;
2. Defendants' Motion to Dismiss (ECF No. 23) is GRANTED IN PART and DENIED IN PART as follows:
    a. Any claim for damages asserted by Plaintiff against any Defendant in his or her official capacity is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction; and
    b. Plaintiff's claims against Defendants DeCesaro, Higgins, Keisel, Owens, Soucie, VanMeter, Walker, Wildenstein, John Does 1–4, and Jane Does

1–2 are DISMISSED WITHOUT PREJUDICE.

c. Defendants' Motion to Dismiss is DENIED in all other respects; therefore, Plaintiff's Claim One remains as against Defendant Luyando, Plaintiff's Claim Two remains as against Defendant Chapdelaine, Plaintiff's Claim Three remains as against Defendant Little, and Plaintiff's Claim Four remains as against Defendants Giles, Swingle, and Thode.

3. On all future filings, the parties and the Clerk shall ensure that the caption reflects that only Defendants Chapdelaine, Giles, Little, Luyando, Swingle, and Thode remain as Defendants in this matter.

Dated this 4th day of March, 2016.

BY THE COURT:

______________________
William J. Martínez
United States District Judge