IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00182-WJM-KLM

JOHN MICHAEL BROADUS,

        Plaintiff,

v.

CHAPDELAIN, Associate Warden,
CHP, Clinical Health Provider,
GILES, Lieutenant,
EVA LITTLE, Lieutenant,
LUYANDO, Lieutenant,
SWINGLE, Lieutenant, and
THODE, Sergeant,

        Defendants.

_____

## MOTION FOR SUMMARY JUDGMENT FROM
## DEFENDANT CORRECTIONAL HEALTH PARTNERS, INC.
_____

       Defendant Correctional Health Partners, Inc. ("CHP"),[1] by and through its counsel,

Andrew D. Ringel, Esq., Christina S. Gunn, Esq., and Matthew J. Hegarty, Esq. of Hall &

Evans, L.L.C., hereby respectfully submits this Motion for Summary Judgment, as follows:

### INTRODUCTION

       Plaintiff John Michael Broadus attempts a single claim against CHP for alleged

deliberate indifference to his serious medical needs in violation of the Eighth Amendment

pursuant to 42 U.S.C. § 1983. [*See* ECF No. 6 at 8-10].  CHP contracts with the Colorado

---

[1] Incorrectly designated in the caption as "CHP, Clinical Health Provider."

Department of Corrections ("CDOC") to review and approve or reject requests made by CDOC healthcare providers for outside medical care for CDOC inmates.  CHP is an administrator and does not provide any direct medical care for any CDOC inmates including the Plaintiff.  Here, Plaintiff challenges two decisions made by a Medical Director of CHP to deny two requests for MRIs of Plaintiff's right knee.  Based on CHP's extremely limited role, CHP cannot be held liable for any violation of Plaintiff's Eighth Amendment rights as a matter of law based on the undisputed facts contained in the summary judgment record before this Court.

CHP is entitled to summary judgment on Plaintiff's claim for three reasons.  First, Plaintiff's claim against CHP is insufficient because Plaintiff cannot establish any action or omission of CHP caused Plaintiff's claimed violation of his constitutional rights related to the medical treatment provided his injured right knee.  Second, even if the requisite causal link could be shown, Plaintiff also cannot advance evidence of any subjective intent by anyone associated with CHP necessary for any cognizable Eighth Amendment claim against CHP.  Third, the denials of the MRIs for Plaintiff's right knee do not constitute a custom, policy or practice of CHP.

## **MOVANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      CHP contracts with CDOC to review and provide prior authorization for medical care to be provided to CDOC inmates outside of the internal CDOC medical system.  [*See* CHP's CDOC Provider Manual, at CHP 0073-0076, Exh. A-1].

2.      CHP is a medical services organization, not a healthcare provider.  For the CDOC, CHP does not provide any health care.  Instead, CHP's responsibility pursuant to its contract with CDOC is to "evaluate information that was sent to us for medical

necessity for a variety of requested referrals.  We were given specific information and we were asked to make a decision based on that provided information and we were to do it based on clinical guidelines and some unique correctional overlays and then we were asked to make decisions." [*See* Deposition of Stephen R. Krebs, M.D., at 24:14-25 & 25:1, Exh. A-2].

3.     CHP's CDOC Provider Manual states, "If a provider disagrees with the decision rendered in this process, providers may utilize the appeal process described in the provider manual, Section 8, DOC Medical Necessity Appeal Process." [*See* Provider Manual, at CHP 0076, Exh. A-1].

4.     Per CDOC policy, an inmate is not permitted to appeal a decision by CHP denying a referral. [*See* Provider Manual, at CHP 0090, Exh. A-1].

5.     Rather, the first step in the CDOC medical necessity appeal process is for an inmate's provider, upon receipt of a denial, to submit additional and pertinent clinical information to CHP for a Level 1 Appeal. [*See* Provider Manual, at CHP 0090, Exh. A-1].

6.     At this stage, a different CHP Medical Director than the Medical Director who was involved in the original denial would consider the appeal. [*See* Provider Manual, at CHP 0090, Exh. A-1].

7.     This second Medical Director would review all additional and pertinent clinical information and render a final decision for CHP, and the provider would be notified the determination on the Level 1 Appeal. [*See* Provider Manual, at CHP 0090, Exh. A-1].

8.     The Level 1 Appeal reviewer is required to include the specific reason or reasons for the adverse determination including rationale, and the internal rule, guideline,

protocol, or other similar criteria used to make the adverse determination. [*See* Provider Manual, at CHP 0091, Exh. A-1].

9.      In the event the Level 1 Appeal is denied, the provider is required to mail an additional request to CHP for a Level 2 Appeal within 45 days of the date on the appeal determination letter. [*See* Provider Manual, at CHP 0090, Exh. A-1].

10.     At that point, the Level 2 appeal is referred to CDOC's Chief Medical Officer, who makes the final and binding determination after reviewing all information pertinent to the Level 2 Appeal, including all materials previously submitted and any additional documentation from the Level 1 appeal. [*See* Provider Manual, at CHP 0090-0091, Exh. A-1].

11.     CDOC retains all authority to make final decisions regarding any and all interpretations of, or modifications to, Covered Services. [*See* Provider Manual, at CHP 0090-0091, Exh. A-1].

12.     When a health care provider at a prison requested a referral for a specific service, they were to complete a specific set of data and attach clinical information to their request. [*See* Krebs Dep., at 25:2-22, Exh. A-2].

13.     This form and its data and any attached clinical information were sent to the CHP adjudicators like Stephen Krebs, M.D.  [*See* Krebs Dep., at 25:23-25, Exh. A-2].

14.     Dr. Krebs does not speak with providers personally in the course of adjudicating a particular referral.  [*See* Krebs Dep., at 26:1-3, Exh. A-2].

15.     In this referral system, adjudicators like Dr. Krebs are asked to make a decision on the basis of the information provided to them, and if there was inadequate

information to support a referral, the referral was denied.  [*See* Krebs Dep., at 26:20-27:8, Exh. A-2].

16.    "Fundamentally CDOC set the whole system up and all the rules for [adjudicators] and [they] followed the CDOC's rules. CHP didn't make any rules. [CDOC] gave them a rule book by which [they] adjudicated cases."  [*See* Krebs Dep., at 32:18-24, Exh. A-2].

17.    The goal of this system was to ensure inmates could function where possible in their activities of daily living ("ADLs").  [*See* Krebs Dep., at 31:19-32:17, Exh. A-2].

18.    Dr. Krebs was involved for CHP in determining whether to approve outside medical treatment and tests for a knee injury for the Plaintiff requested by the Plaintiff's CDOC treating health care providers.  [*See* Krebs Dep., at 38:9-11, Exh. A-2].

19.    The sensitivity and specificity of the McMurray's test, which may be suggestive of meniscal pathology if positive, is 50 percent, meaning it is not particularly helpful in clinically diagnosing whether an MRI is needed for a knee injury.  [*See* Krebs Dep., at 43:9-44:21, Exh. A-2].

20.    Under the Milliman Care Guidelines, there is no single factor that would be sufficient to warrant an MRI of the knee.  [*See* Krebs Dep., at 44:22-45:6, Exh. A-2].

21.    The encounter report Dr. Krebs received from CDOC respecting Plaintiff's appointment on March 25, 2014, with medical staff at Sterling Correctional Facility ("SCF") indicated: Plaintiff ambulated into the room and in and out of a chair without difficulty; and Plaintiff's strength in his knee was observed to be 5/5 with flexion and extension

bilaterally.   [*See* Krebs Dep., at 57:14-58:2 & 59:1-20, Exh. A-2; Utilization Review, 3/25/14, Exh. A-3].

22.     Dr. Krebs stated that "based on this referral, the probability that he had a significant internal derangement of the knee is very small." [*See* Krebs Dep., at 59:9-13, Exh. A-2].

23.     Dr. Krebs was not informed as to whether Plaintiff was administered anti-inflammatories or whether he saw a physical therapist.  [*See* Krebs Dep., at 59:13-16, Exh. A-2].

24.     Dr. Krebs denied the request for an MRI as not medically necessary on April 10, 2014.  [*See* Utilization Review, 3/25/14, Exh. A-3].

25.     Based on the information actually given him by CDOC, Dr. Krebs stated the denial of the requested referral of an MRI for Plaintiff following this appointment "is so obvious that there was no reason to look" at Milliman.  [*See* Krebs Dep., at 59:21-60:1, Exh. A-2].

26.     The encounter report Dr. Krebs received from CDOC respecting Plaintiff's appointment on June 2, 2014, with medical staff at SCF indicated: Plaintiff was wearing a knee brace, was taking pain medications, and had attempted physical therapy on his own with little relief; but that Plaintiff did not undergo a new physical examination for his knee.  [*See* Krebs Dep., at 61:22-62:16 & 63:5-64:5, Exh. A-2; Utilization Review, 6/2/14, Exh. A-4].

27.     It is the CDOC provider's responsibility to attach an inmate's relevant medical history for a sequential referral.  [*See* Krebs Dep., at 60:6-25, Exh. A-2; Provider Manual, at CHP 0075, Exh. A-1].

28.     The providers at SCF were told to do a new exam with each referral, both in their training and in periodic educational meetings, such that "if you basically provide the same referral, you're going to get the same adjudication." [*See* Krebs Dep., at 64:6-16, Exh. A-2].

29.     Based on the information actually given him by CDOC, Dr. Krebs denied the requested referral of an MRI on June 13, 2014, for Plaintiff due to "no objective impairment of ADLs." [*See* Krebs Dep., at 66:21-67:6, Exh. A-2; Utilization Review, 6/2/14, Exh. A-4].

30.     Adjudicators like Dr. Krebs were not allowed to suggest additional care beyond the boundaries of the referral given to them for adjudication. [*See* Krebs Dep., at 69:5-18, Exh. A-2].

31.     Dr. Krebs had no ability to suggest alternative care for any CDOC inmate. [*See* Krebs Dep., at 27:14-20, Exh. A-2].

32.     Nor did adjudicators like Dr. Krebs know the prison where the inmate in question on a particular referral request was incarcerated. [*See* Krebs Dep., at 50:13-23, Exh. A-2].

33.     In this instance, denial and appeal forms were faxed to SCF on two separate occasions after the denials of referrals for Plaintiff on April 10, 2014, and June 13, 2014. [*See* CHP Chart, at CHP 0017, 0020, 0048 & 0051, Exh. A-5].

34.     On September 16, 2014, Plaintiff's CDOC healthcare provider requested physical therapy for the Plaintiff which Dr. Krebs approved on October 6, 2014.  [*See* Utilization Review, 9/16/14, Exh. A-6].

35.     Plaintiff's claim against CHP is based on CHP's failure to approve an MRI on his right knee.  [*See* Deposition of John Michael Broadus, at 47:6-9, Exh. A-7].

36.     Since September of 2014, Plaintiff has not seen any medical provider for his knee at all.  [*See* Broadus Dep., at 104:23-25, Exh. A-7].

37.     No one informed Plaintiff the denial of the MRI by CHP could be appealed. [*See* Broadus Dep., at 120:23-124:1, Exh. A-7].

38.     Plaintiff never communicated in any fashion with CHP.  [*See* Broadus Dep., at 46:19-21, Exh. A-7].

## ARGUMENT

Initially, for purposes of summary judgment CHP assumes, but by no means concedes, Plaintiff's reports of considerable pain in his knee satisfied the objective component of Plaintiff's Eighth Amendment claim against CHP.

## A.      PLAINTIFF CANNOT ESTABLISH ANY ACTION OR OMISSION OF CHP CAUSED HIM ANY CONSTITUTIONAL INJURY

First, Plaintiff's claim against CHP is insufficient on summary judgment because Plaintiff cannot establish any action or omission of CHP caused Plaintiff's claimed constitutional violation related to his right knee.

The plain wording of 42 U.S.C. § 1983 contains a causation requirement. Thus, "a defendant may not be held liable unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation." ***McDonald v. Wise,*** 769 F.3d 1202, 1215 (10th Cir. 2014) (quoting ***Tonkovich v. Kan. Bd. of Regents,*** 159 F.3d 504, 518 (10th Cir. 1998)). "Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation." ***James v. Chavez,*** 511 F. App'x 742, 750 (10th Cir.

2013) (quoting *Lamont v. New Jersey,* 637 F.3d 177, 185 (3d Cir. 2011)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988). Proximate cause does not exist if another act intervened and superseded between a defendant's act or omission and the plaintiff's injury. *Bliss v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 2006).

In the context of Eighth Amendment deliberate indifference claim, an inmate must establish legal causation by showing the particular defendant at issue (1) knew the inmate faced a substantial risk of harm, and (2) disregarded that risk by failing to take reasonable measures to abate it. *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009). The Tenth Circuit rejected the argument deliberate indifference does not require any connection between the subjective disregard of a risk of serious harm and the objective harm actually claimed. *See id.* at 1089 n.8; *Daniels v. Gilbreath*, 668 F.2d 477, 488-89 (10th Cir. 1982). Even an obvious risk cannot establish an inference the defendant knew subjectively of the substantial risk of harm, because the defendant can show the obvious escaped it. *Martinez*, 563 F.3d at 1089. In the end, "large leap or short hop," a plaintiff must prove legal causation. *Beers v. Ballard*, 248 F. App'x 988, 991 (10th Cir. 2007).

In addition, to state any cognizable 42 U.S.C. § 1983 claim against CHP requires Plaintiff to meet the applicable entity liability requirements.  The Tenth Circuit has held traditional municipal liability principles apply to § 1983 claims brought against private corporations.  *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216-17 (10th Cir. 2003); *Smedley v. Corr. Corp. of Am.,* 175 Fed. Appx. 943, 945-46 (10th Cir. 2005).  Under entity liability principles, CHP cannot be held liable simply because it employed a person

who allegedly violated a plaintiff's constitutional rights.  Instead, "[t]o establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged." **Jenkins v. Wood,** 81 F.3d 988, 993 (10th Cir. 1996).

Here, the evidence in the summary judgment record simply does not establish the requisite legal causation to allow Plaintiff's claim against CHP to survive summary judgment. The Provider Manual governing the process of obtaining medical referrals dictates the following:  (1) Medical Directors (claims adjudicators) in Dr. Krebs' position made the initial determination as to whether a requested medical referral was approved or denied; (2) if the provider disagreed, the provider had to submit all additional and pertinent clinical information to CHP for a Level 1 Appeal, which would be reviewed by a different Medical Director to ensure independence; and (3) if that appeal was denied, the provider was entitled to a Level 2 Appeal to the CDOC Chief Medical Officer, who made the final and binding decision after reviewing all information pertinent to the Level 2 Appeal.  [¶¶ 1-11].[2]

Despite the provision of multiple layers of review and internal controls to providers treating CDOC inmates like Plaintiff, however, there is no evidence Plaintiff's health care providers with the CDOC utilized either the Level 2 Appeal or even the Level 1 Appeal processes. As for Dr. Krebs, who acted on behalf of CHP, he merely made an interim decision that was fully appealable by the CDOC healthcare providers. Accordingly, the failure of Plaintiff's providers to appeal either initial denial of the requested MRI is at least

---

[2] Factual references are made to the paragraph numbers in the above Movant's Statement of Undisputed Material Facts.

an intervening cause, if not a superseding cause, either of which are sufficient to sever the causal chain, meaning the requisite causal link is entirely absent from the evidence and no reasonable jury could find otherwise as a matter of law.   Hence, "[b]ecause [Plaintiff] has failed to identify any custom or practice of CHP that has a direct causal link to the alleged constitutional violations," CHP is entitled to summary judgment in its favor on this claim. *Sherman v. Klenke*, 653 F. App'x 580, 592 (10th Cir. 2016).

## B.   PLAINTIFF ALSO CANNOT ESTABLISH THE SUBJECTIVE COMPONENT FOR HIS EIGHTH AMENDMENT CLAIM

Second, even if the requisite causal link could be shown, Plaintiff also cannot advance evidence of Dr. Krebs' or CHP's subjective intent sufficient to survive summary judgment.

Prison officials must ensure inmates receive the basic necessity of adequate medical care and must not be deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014). Generally, to prevail on his claim of constitutionally inadequate medical care, Plaintiff must satisfy a two-prong test: (1) objectively, the prisoner's medical condition must have been "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause; and (2) subjectively, the official or entity must have known of and disregarded an excessive risk to the inmate's health or safety. *See Al-Turki*, 762 F.3d at 1192. At bottom, the Eighth Amendment "does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Constitution does not mandate comfortable prisons — only deprivations denying "the minimal civilized measure of life's necessities" are

sufficiently grave to violate the Eighth Amendment. ***Wilson v. Seiter***, 501 U.S. 294, 298 (1991) (citation omitted) (quoting ***Rhodes v. Chapman***, 452 U.S. 337, 347 (1981)).

The Tenth Circuit recognizes three types of potential deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition; (2) a prison official preventing an inmate from receiving medical treatment; or (3) a prison official denying a prisoner access to medical personnel capable of evaluating the inmate's condition. *See **Sealock v. Colorado***, 218 F.3d 1205, 1211 (10th Cir. 2000). Plaintiff's claim against CHP invokes the second type of conduct, so-called "gatekeeper" liability.

However, mere negligence can never be "deliberate indifference" under the subjective component of the Eighth Amendment, as deliberate indifference is equivalent to criminal recklessness in this context. ***Smith v. Cummings***, 445 F.3d 1254, 1258 (10th Cir. 2006); *see **Hood v. Prisoner Health Servs.***, 180 F. App'x 21, 25 (10th Cir. 2006). Indeed, negligent treatment of a medical condition (or negligent prevention of treatment) is not a cognizable wrong under the Eighth Amendment, as alleged medical malpractice is not a constitutional violation just because the victim is a prisoner. *See **Duffield v. Jackson***, 545 F.3d 1234, 1238 (10th Cir. 2008); ***Fitzgerald v. Corr. Corp. of Am.***, 403 F.3d 1134, 1143 (10th Cir. 2005). In this regard, an official's failure to alleviate a significant risk he should have perceived but did not, while no cause for commendation, cannot be condemned as infliction of punishment, as actual knowledge is required. *See **Farmer***, 511 U.S. at 838; ***Barney v. Pulsipher***, 143 F.3d 1299, 1310 (10th Cir. 1998) ("It is not enough to establish that the official should have known of the risk of harm."). Finally, an Eighth Amendment claim relating to denial of medical care is actionable "only in cases

where the need for additional treatment or referral to a medical specialist is obvious." ***Self v. Crum***, 439 F.3d 1227, 1232 (10th Cir. 2006).

For several reasons, there simply is no evidence Dr. Krebs knowingly disregarded risks to Plaintiff's health as to his knee. First, in initially seeking a referral, CDOC medical personnel failed to provide Dr. Krebs with complete information as to Plaintiff's present condition and past treatment. This is so because such medical personnel were both required to complete a specific set of data and attach all clinical information they believed relevant to the referral, because Dr. Krebs was unable to speak with the providers due to the way the system is set up. [¶¶ 13 & 15]. Yet Dr. Krebs did not know until his deposition that prior to the first request, Plaintiff was administered anti-inflammatories and saw a physical therapist. [¶ 23].

Second, the information actually provided to Dr. Krebs on both occasions was inadequate to support a referral. Regarding the first referral, this is so because Dr. Krebs stated that on the basis of the information made available to him by CDOC, namely that Plaintiff came into the examination room without observable difficulty, was able to get in and out of a chair without difficulty, had objective strength in his knee of 5/5 with flexion and extension bilaterally, the decision to deny the first requested referral for an MRI was "so obvious that there was no reason to look" at the Milliman Care Guidelines. [¶¶ 18-25]. And regarding the second referral, this is so because Dr. Krebs was not presented with any evidence Plaintiff's ADLs were impacted, despite CDOC medical personnel being both instructed and trained to subject the inmate to a new physical examination to adequately support a sequential referral. [¶¶ 26-29].

Third, the entity with ultimate interpretive and approval authority over the claims management system by which Dr. Krebs adjudicated requests for referrals was CDOC and not CHP. [¶ 11].   Fourth, Dr. Krebs did not engage in the practice of medicine, established by the prohibition on claims adjudicators in Dr. Krebs' position from being able to suggest additional or alternative means of care, the fact Dr. Krebs relied exclusively on the information provided to him by the CDOC healthcare provider on the referral form itself and the entire nature of the system.   [¶¶ 12-17 & 30-32]. Plaintiff can point to no evidence on summary judgment indicating "CHP's denials of his requested care were 'automatic' or were not otherwise the product of the sincere opinions of CHP's employees." *Denison v. Corr. Health Ptrs.*, 2015 U.S. Dist. LEXIS 113874, at *9-10 (D. Colo. Aug. 26, 2015).

Anticipating Plaintiff's argument, CHP states *Swan v. Physician Health Ptrs.*, 212 F. Supp. 3d 1000 (D. Colo. 2016), is inapposite for several reasons: (1) the District Court in *Swan* concluded the plaintiff's allegations in his complaint, even if ultimately proven untrue, were sufficient to survive application of Fed. R. Civ. P. 12, but the procedural posture of this case is at the summary judgment stage and Fed. R. Civ. P. 56, under which mere allegations are no longer sufficient to avoid a dispositive motion, *SEC v. Smart*, 678 F.3d 850, 858 (10th Cir. 2012) (mere allegations insufficient to create fact issue for which summary judgment can be denied); *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) ("[O]f course, the argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment."); (2) when actually deposed, Dr. Krebs established he did not and could not have the subjective intent necessary to be deliberately indifferent, in his capacity as a claims administrator

and in a manner attributable to CHP, if CDOC medical personnel did not provide him complete information as they had been trained to do; (3) CDOC medical personnel did not provide to Dr. Krebs complete information about the extent of Plaintiff's medical history, prior treatment, or updated condition; (4) on the basis of the information with which Dr. Krebs **was** actually presented, Dr. Krebs concluded an MRI was not medically necessary; and (5) at bottom, Krebs and CHP were merely effectuating CDOC policy by applying CDOC policy to the specific instance occasioned by the requests for an MRI for Plaintiff's right knee.

## C.   DR. KREBS' INDIVIDUAL DECISIONS RELATED TO PLAINTIFF DO NOT ESTABLISH A CUSTOM, POLICY OR PRACTICE OF CHP

Here, Plaintiff relies exclusively on the two decisions by Dr. Krebs to deny him a referral for an MRI of his right knee as the factual predicate for his claims against CHP. However, these two decisions are not and cannot be considered as establishing any custom, policy or practice of CHP.  A custom is a "persistent and widespread" practice that "constitutes the standard operating procedure of the local government entity." *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989).  Entity liability only attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati,* 475 U.S. 469, 483 (1986); *Myers v. Okl. Cty. Bd. of Cty. Comm'rs,* 151 F.3d 1313, 1319 (10th Cir. 1998).  No evidence of any widespread policy or custom of CHP to deny requests such as the MRIs for the Plaintiff exists in the summary judgment record.  Plaintiff's reliance on the decisions related to the Plaintiff himself is insufficient as a matter of law.  "Proof of a single incident of

unconstitutional activity is not sufficient to impose liability under ***Monell*** . . ., unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." ***Butler v. City of Norman,*** 992 F.2d 1053, 1055 (10th Cir. 1993).  No such evidence exists here entitling CHP to summary judgment on Plaintiff's entity liability claim.

## CONCLUSION

In conclusion, for all of the foregoing reasons, Defendant Correctional Health Partners, Inc. respectfully requests this Court grant it summary judgment on all of Plaintiff's claims against it, dismiss all of Plaintiff's claims against it with prejudice in their entirety, and for all other and further relief as this Court deems just and appropriate.

Dated this 2nd day of June, 2017.

Respectfully submitted,


*s/ Andrew D. Ringel*
Andrew D. Ringel, Esq.
Christina S. Gunn, Esq.
Matthew J. Hegarty, Esq.
HALL & EVANS, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Phone: (303) 628-3300
Fax:  (303) 628-3368
ringela@hallevans.com
gunnc@hallevans.com
hegartym@hallevans.com

**ATTORNEYS FOR DEFENDANT CORRECTIONAL HEALTH PARTNERS**

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on the 2nd day of June, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| Robert C. Hess, Esq.<br>Rob.huss@coag.gov | Michael  Hazel<br>michael.hazel@wilmerhale.com | Michael Silhasek<br>michael.silhasek@wilmerhale.com |
| Natalie Hanlon-Leh<br>natalie.hanlonleh@wilmerhale.com | Nora Passamaneck<br>nora.passamaneck@wilmerhale.com | |

s/ *Nicole Marion*, Legal Assistant to   .
Andrew D. Ringel, Esq.
Christina S. Gunn, Esq.
Matthew J. Hegarty, Esq.
HALL & EVANS, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Phone: (303) 628-3300
ringela@hallevans.com
gunnc@hallevans.com
hegartym@hallevans.com

**ATTORNEYS FOR DEFENDANT
CORRECTIONAL HEALTH PARTNERS**